**U.S. COURTS**

DEC 1 2 2023

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

MATTHEW CHOU, CALIFORNIA STATE BAR NO. 325199
TRIAL ATTORNEY
CHRISTOPHER J. CARLBERG, CALIFORNIA STATE BAR NO. 269242
ASSISTANT CHIEF
UNITED STATES DEPARTMENT OF JUSTICE
ANTITRUST DIVISION, SAN FRANCISCO OFFICE
450 GOLDEN GATE AVENUE
BOX 36046, ROOM 10-0101
SAN FRANCISCO, CA 94102-3478
TELEPHONE: (415) 934-5300
FACSIMILE: (415) 934-5399

JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
SEAN M. MAZOROL, OREGON STATE BAR NO. 116398
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE STREET, SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>IKE TOMLINSON and<br>KRIS BIRD,<br><br>Defendants. | Case No. CR 23-0326-S AKB<br><br>**INDICTMENT**<br><br>Count 1: 18 U.S.C. § 1349<br>(conspiracy to commit wire fraud)<br>Counts 2–6: 18 U.S.C. §§ 1343 and 2(a)<br>(wire fraud)<br>Count 7: 15 U.S.C. § 1<br>(conspiracy in restraint of trade: bid<br>rigging and territorial allocation) |

**INDICTMENT – 1**

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment, on or about the approximate dates, times, and durations stated below:

### Overview

1.      To secure the best deal for taxpayers—and to promote free and fair competition—the U.S. Forest Service advertises and runs a bidding process to award certain firefighting-related contracts to qualified small businesses. These vendors supply fuel trucks, water trucks, communications trailers, and more. The Forest Service awards contracts to vendors based on the service they provide in a location at a price determined during the bidding process. Then, when wildfires arise, state and federal agencies rely on those contracts to order and dispatch equipment on short notice.

2.      Since at least in or about February 2014, up to and including in or about March 2023, IKE TOMLINSON and KRIS BIRD defrauded the U.S. Forest Service and other federal and state agencies that procure firefighting equipment through the Forest Service and conspired to rig bids and allocate territories as to Forest Service contracts.

### Background

**A.      The Defendants, Their Co-Conspirators, and Their Companies**

3.      IKE TOMLINSON, a resident of Idaho, formerly owned Co-Conspirator Company A and Co-Conspirator Company B. In October 2020, IKE TOMLINSON and his wife sold Co-Conspirator Company A and Co-Conspirator Company B to Co-Conspirator Individual 1 and Co-Conspirator Individual 2. Even after the sale, however, IKE TOMLINSON remained involved in the operation of Co-Conspirator Company A and Co-Conspirator Company B.

**INDICTMENT – 2**

4.     Co-Conspirator Company A has won federal contracts to provide fuel trucks to dispatch centers in Idaho and elsewhere.

5.     Co-Conspirator Company B has won federal contracts to provide fuel trucks to dispatch centers in Idaho, Nevada, California, Montana, and elsewhere.

6.     KRIS BIRD, a resident of Idaho, is the president of Co-Conspirator Company C.

7.     Co-Conspirator Company C has won federal contracts to provide fuel trucks to dispatch centers in Idaho, Nevada, and elsewhere. Co-Conspirator Company C competed against Co-Conspirator Company A and Co-Conspirator Company B.

8.     Whenever in this Indictment reference is made to any act or transaction of a corporate entity, the allegation means that the entity engaged in the act or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

**B.     Background on Fuel Trucks, Water Trucks, and Firefighting Dispatch Centers**

9.     The U.S. Forest Service procures the services of fuel tenders (commonly called "fuel trucks") from private vendors. The Forest Service uses fuel trucks to supply the firefighting efforts of federal and state agencies. At a firefighting site or "fire camp," fuel trucks dispense fuel for a broad range of equipment, from electricity generators to all-terrain vehicles.

10.     The U.S. Forest Service also procures the services of water tenders (commonly called "water trucks") from private vendors.

11.     The U.S. Forest Service solicits competing bids from qualified fuel truck and water truck vendors. The bidding deadline is roughly every February, March, or early April.

12.     The fuel truck bids have three elements most relevant here: (A) the fuel truck's type; (B) the fuel truck's intended dispatch center; and (C) the fuel truck's daily rate, meaning the price in dollars per day if called out to a fire.

    a.    *Type*: A fuel truck's type (Type 1, 2, or 3) denotes how much fuel it can hold. Type 1 trucks hold more fuel than Type 2 or Type 3 trucks.

    b.    *Dispatch center*: A dispatch center generally serves a particular geographic area. For example, the Boise Interagency Dispatch Center generally serves the area around Boise, Idaho.

    c.    *Daily rate*: For a given dispatch center and type of fuel truck, vendors bid a daily rate. The rate is the price per day for the U.S. Forest Service to use the truck.

13.     In other words, vendors bid to place a specific fuel truck at a specific dispatch center at a specific price, and the U.S. Forest Service awards contracts on this basis.

14.     Dispatch centers at issue include centers in the U.S. Forest Service's Great Basin region, also known as Region 4. These centers are nicknamed according to places in Idaho and Nevada that roughly correspond to nearby cities or areas, such as "Boise," "Salmon," "Idaho Falls," "Payette" or "McCall," "Shoshone" or "South Central," and "Elko."

15.     Each dispatch center has a dispatch priority list (DPL) for fuel trucks and water trucks. The DPL sequentially prioritizes which vendor the center contacts first when it needs equipment. If the Boise dispatch center needs a Type 2 fuel truck, for example, it will start by contacting the vendor who owns the first truck on Boise's Type 2 DPL. That truck then has the right of first refusal on fulfilling the resource order. The dispatch center will proceed down the DPL based on the needs of the dispatch center and availability of trucks higher on the DPL.

16.     A truck makes its daily rate only if it fulfills resource orders. Thus, a truck's position on the DPL determines how many opportunities the truck's owner has to make money.

**INDICTMENT – 4**

17.     Daily rates largely determine the order on the DPL. For a given type of fuel truck in each dispatch center, the U.S. Forest Service usually lists the lowest price trucks first and the highest price trucks last. The cheaper it is to deploy a fuel truck per day, the higher its priority.

18.     The U.S. Forest Service sets its DPLs once per year based on the bidding cycle conducted in or about each February, March, or early April.

## C.    Confidential Bids for Firefighting-Equipment Contracts

19.     The U.S. Forest Service expects vendors' bids to be competitive and confidential. The bids are competitive in that companies compete to have the lowest priced bid and to be higher priority on the DPL. And the bids are confidential in that, before the Forest Service awards each year's contracts, competing vendors should not know each other's bids.

20.     For the defendants' companies to be eligible to bid on contracts, the U.S. Forest Service and its contracts required the defendants' companies to submit annual representations and certifications through the federal government's online System for Award Management (SAM.gov) or SAM's predecessors. One of those certifications was a certificate of independent price determination. Every year since at least 2014, IKE TOMLINSON, KRIS BIRD, Co-Conspirator Company A, Co-Conspirator Company B, and Co-Conspirator Company C have attested and caused the attestation to a certificate of independent price determination.

21.     By signing the certificate, the signatory and those listed therein promise among other things, the following:

> (1) The prices in this offer have been arrived at independently, without, for the purpose of restricting competition, any consultation, communication, or agreement with any other offeror or competitor relating to-
>
> > (i) Those prices;
> >
> > (ii) The intention to submit an offer; or
> >
> > (iii) The methods or factors used to calculate the prices offered.

**INDICTMENT – 5**

(2) The prices in this offer have not been and will not be knowingly disclosed by the offeror, directly or indirectly, to any other offeror or competitor before bid opening (in the case of a sealed bid solicitation) or contract award (in the case of a negotiated solicitation) unless otherwise required by law; and

(3) No attempt has been made or will be made by the offeror to induce any other concern to submit or not to submit an offer for the purpose of restricting competition.

Federal Acquisition Regulation (FAR) § 52.203-2.

## Defendants' Fraud, Bid Rigging, and Territorial Allocation

**A.     The 2014 Takeover of Co-Conspirator Company A from Its Founder**

22.     Individual 3 founded Co-Conspirator Company A in or about 2011. Until July 2014, Individual 3 owned and led Co-Conspirator Company A.

23.     Between in or about 2011 and fall 2013, Co-Conspirator Company A operated about three fuel trucks. Two belonged to KRIS BIRD. Individual 3 allowed BIRD to deploy BIRD's fuel trucks under Co-Conspirator Company A's name until fall 2013. But, before the 2014 procurement cycle, BIRD sought to bid his trucks under his own business, Co-Conspirator Company C.

24.     KRIS BIRD also offered to buy Individual 3's fuel truck. Individual 3 ultimately declined. Indeed, at that time, Individual 3 planned to expand Co-Conspirator Company A's operations. In January 2014, Individual 3 spent significant funds on a second fuel truck.

25.     But in the U.S. Forest Service's 2014 contracts, Co-Conspirator Company A was third on the dispatch priority lists where it bid, behind Co-Conspirator Company C and Co-Conspirator Company B. Individual 3 knew that, without higher priority on the DPLs, he could not afford to maintain his two fuel trucks.

**INDICTMENT – 6**

26.     On or about June 7, 2014, IKE TOMLINSON called Individual 3 and offered to buy Co-Conspirator Company A. Immediately before calling Individual 3, IKE TOMLINSON called KRIS BIRD for 50 minutes.

27.     In July 2014, given Co-Conspirator Company A's low priority on the DPLs, Individual 3 sold Co-Conspirator Company A and its fuel trucks to IKE TOMLINSON. Thereafter, Individual 3 no longer competed with IKE TOMLINSON and KRIS BIRD.

28.     In May 2023, KRIS BIRD apologized to Individual 3 for IKE TOMLINSON's 2014 buyout of Co-Conspirator Company A.

**B.      Since at Least 2014, IKE TOMLINSON and KRIS BIRD Have Texted and Called to Collude and Rig Bids on U.S. Forest Service Contracts**

29.     Since at least the 2014 procurement cycle, IKE TOMLINSON and KRIS BIRD have communicated every year in the lead up to the bidding deadline for fuel trucks.

30.     IKE TOMLINSON and KRIS BIRD texted each other before bidding deadlines in 2015, 2017 through 2020, and 2022 about either fuel trucks or water trucks.

31.     On March 4, 2015, for example, IKE TOMLINSON and KRIS BIRD texted each other at length about bids on water trucks. Below is an excerpt of their text exchange. IKE TOMLINSON's texts are prefaced "IT" and KRIS BIRD's "KB":

| | |
|---|---|
| IT: | Got my water tenders in. Did not put any in salmon. FYI |
| KB: | You are the man!! If you want to put a couple here for a high amount I don't really care! |
| IT: | I think I might do that. What should I bid? |
| KB: | All find out what my bid was and then maybe we'll both raise them. 😊 |
| IT: | K just let me know. Thanks |
| KB: | How high can we go on the water trucks?without being too high |

| | |
|---|---|
| IT: | Not sure. I'm 2000 on some and have been fine. |
| KB: | Then we know we can at least do 2000.  How many gallons are the trucks you want to put in salmon? |
| IT: | 3499. Or 3999 |
| IT: | I can do either |
| IT: | Want me to do the 3499 for 2000? |
| KB: | If you put the 3499 trucks at 2000. We should be good. I'll put mine at 1975. If that's good? |
| KB: | I guess you were thinking the same thing. |
| IT: | Great minds think alike. Scary |

32.     In addition, in each year from 2014 through 2023, IKE TOMLINSON and KRIS BIRD spoke over the phone in the several days leading up to the bidding deadline for fuel trucks.

33.     For example, in 2014, the bidding deadline for fuel trucks was February 14, 2014. On February 10, 12, and 13 of that year, IKE TOMLINSON and KRIS BIRD called each other about three times and spoke for about 36 minutes.

34.     As another example, in 2017, the bidding deadline for fuel trucks was April 3, 2017. On March 13, 27, and 28 of that year, IKE TOMLINSON and KRIS BIRD called each other about four times and spoke for a combined total of about 32 minutes. Then, on March 31, 2017, IKE TOMLINSON and KRIS BIRD texted each other the following:

| | |
|---|---|
| IT: | Boise. Ike $2549<br>            Chris $2560<br>Salmon. Ike $2600<br>            Chris $2590 |
| IT: | Sound ok? |
| KB: | Looks great |
| IT: | Deal 🤝 |

**C.      In February 2020, IKE TOMLINSON Asked Individual 4 to Collude**

35.     On February 6, 2020, IKE TOMLINSON spoke with Individual 4—who was involved with Company D, a new competitor—at Individual 4's home. A couple days before, IKE TOMLINSON had been caught unlawfully entering the shop belonging to Individual 4, Individual 5, and their company, Company D, in Idaho. Individual 4 recorded the conversation at Individual 4's home.

36.     In the recording, IKE TOMLINSON admitted entering the shop because Company D had bought a fuel truck.

37.     IKE TOMLINSON then proposed a deal. IKE TOMLINSON proposed that he, Individual 4, and Individual 5 could collude on bids on contracts for communication trailers and fuel trucks. A communication trailer (or "communication unit") is another kind of equipment that the U.S. Forest Service uses to fight wildfires. The trailers contain communications systems, such as radios, that assist firefighting personnel.

38.     As to fuel trucks, IKE TOMLINSON admitted his ongoing collusion with KRIS BIRD, and suggested that if IKE TOMLINSON and Individual 4 did not work together, Individual 4 and Company D would "mak[e] no money." Specifically, IKE TOMLINSON said: "As far as the fuel trucks go, I mean it's just like – you know how KRIS BIRD and I work together? We basically talk once or twice a year and decide what we're going to do. And – and we work it out. Now, if I wasn't honest and didn't work it out with you guys that year, trust is gone, we're done. You know what I mean? We're back to battling but – and if we're back to battling, then we're both back to making no money. You see what I'm saying?"

39.     IKE TOMLINSON also proposed selling his communication trailers to Company D—and in exchange, Company D would not compete with IKE TOMLINSON's fuel

trucks. Specifically, IKE TOMLINSON said: "Or another thing is that [Individual 5] and I talked about is maybe, you guys could buy all the trailers. And – and we'll do the fuel trucks and have an agreement where we don't compete against each other."

40.     Individual 4 rejected IKE TOMLINSON's proposals.

41.     Individual 4 also warned IKE TOMLINSON that IKE TOMLINSON's collusion with KRIS BIRD is illegal. Individual 4 said: "But, just a heads up, what you and KRIS do, back and forth knowing each other's prices – if they catch you doing that, it is illegal. So you need to be careful."

**D.      IKE TOMLINSON and KRIS BIRD Continued to Collude**

42.     In 2020, the bidding deadline for fuel trucks was March 23, 2020. Like in earlier years, IKE TOMLINSON and KRIS BIRD called and texted each other shortly before the deadline—and on the day of the deadline itself.

**E.      In October 2020, IKE TOMLINSON Sold His Companies to Co-Conspirator Individual 1 and Co-Conspirator Individual 2**

43.     In October 2020, IKE TOMLINSON and his wife sold Co-Conspirator Company A, Co-Conspirator Company B, and two other companies to Co-Conspirator Individual 1 and Co-Conspirator Individual 2.

44.     The four companies sold for a total purchase price of $8,000,000. Under the sale agreement, IKE TOMLINSON and his wife hold a promissory note that requires Co-Conspirator Individual 1 and Co-Conspirator Individual 2 to pay the purchase price in monthly installments.

45.     After the transfer in ownership interests, Co-Conspirator Individual 1 and Co-Conspirator Individual 2 each owned half of Co-Conspirator Company A and Co-Conspirator Company B.

**INDICTMENT – 10**

**F.     IKE TOMLINSON and KRIS BIRD Continued to Collude After the Sale**

46.     Even after Co-Conspirator Individual 1 and Co-Conspirator Individual 2 bought Co-Conspirator Company A and Co-Conspirator Company B, IKE TOMLINSON and KRIS BIRD continued to communicate before each year's bidding deadline.

47.     In 2022, for example, the bidding deadline for fuel trucks was March 31. The morning of the deadline, IKE TOMLINSON and KRIS BIRD texted each other the following:

> IT:     Boise
>         Type 2
>         Ike $2849
>         Kris $2900
>
>         Salmon
>         Type 2
>         Kris $2450
>         Ike  $2499
>         [Company F] $2500 ??
>
>         Type 3
>         Your call
>         I'd say $2700
>
>         Idaho falls
>         Type 2
>         $ 2900
>
>         Elko
>         Type 3
>         $2700
>
> KB:     I put my type 2 in salmon at 2649.   Last year it was 2549.
>
> KB:     I put Elko at 2800.
>         Thanks
>
> IT:     👍

48.     In February 2023 and March 2023, the U.S. District Court for the District of Idaho authorized wiretaps of cellular phone lines belonging to IKE TOMLINSON and Co-Conspirator Individual 1. Several excerpts from intercepted calls are set forth below.

49.     On February 22, 2023, IKE TOMLINSON and Co-Conspirator Individual 1 discussed "team[ing] up" with KRIS BIRD against two competing vendors, Individual 4 of Company D and Individual 6 of Company E. Co-Conspirator Individual 1 said, "Everywhere else, the prices look great. But in Region 4, we're gonna tighten up, so that we can just drown these bitches out."

50.     On March 17, 2023, KRIS BIRD, IKE TOMLINSON, and Co-Conspirator Individual 1 all spoke together on a phone call. They discussed what bids to submit. And BIRD discussed how to "squeeze [Individual 4] out" and "squeeze [Individual 6] out," with IKE TOMLINSON agreeing "just to kind of squeeze 'em both." The discussion included the daily rates the conspirators planned to bid for various dispatch centers. For example, Co-Conspirator Individual 1 (CC1) said BIRD (KB) could "pick a price" for the Salmon, Idaho dispatch center:

> CC1:   I think you've got a good thing going with Salmon, KRIS. I think, you just pick a price 'cause I – I bet they're going to look at you, 'cause your Type 2 in Salmon's at 2,649. And dang, we're right behind you at 2,650.
>
> KB:    Um-hmm.
>
> CC1:   So I bet they come in and think, "oh let's go 100 bucks cheaper" or somewhere –
>
> KB:    That's kind of where I'm –
>
> CC1:   – in that ballpark.
>
> KB:    – that's what I was thinking. So if, if we probably, what would you say? If we clip ours down 150, 200 bucks?
>
> CC1:   Yeah, I'd say if we both were in the ballpark at like, 2,500 bucks, that – I bet that would do the trick on the Type 2s.
>
> KB:    Yeah, yeah. Yep.

51.     On this March 17, 2023 call, IKE TOMLINSON also assured KRIS BIRD that "[t]he day we can get it contracted we'll, we'll send you a text, kind of like I've done before. […] Of what, what we're actually going to do, so we really know where we're at."

**INDICTMENT – 12**

52.     On a March 19, 2023 phone call, Co-Conspirator Individual 1 (CC1) and Co-Conspirator Individual 2 (CC2) detailed the bids they planned to submit based on what they agreed to with KRIS BIRD:

> CC1:   So, we agreed with KRIS in Salmon that he was going to go 2,500 a day, and we were going to do like 2,505 or something like that.
>
> CC2:   Yeah, you wrote 2,505 next to ours.
>
> CC1:   Yeah, so Salmon we're going to go to 2,505. Our Type 2 there. Boise we're going to do 2,500.
>
> CC2:   Okay.

53.     On March 20, 2023 at 12:22 p.m., IKE TOMLINSON called KRIS BIRD. BIRD asked IKE TOMLINSON, "are you running your stuff through today or tomorrow?" IKE TOMLINSON responded, "I got [Co-Conspirator Individual 1] workin' on it." And IKE TOMLINSON advised BIRD to call Co-Conspirator 1.

54.     On March 20, 2023 at 2:27 p.m., KRIS BIRD and Co-Conspirator Individual 1 finalized BIRD's upcoming bids in Region 4. For example, BIRD (KB) and Co-Conspirator Individual 1 (CC1) had the following exchange:

> CC1:   I got all of ours su – submitted in last night. So, I'm just gonna pull it up here.
>
> KB:    Okay, that's what I was – I haven't punched anything through. And so I thought I better, better go over it with ya and make sure that I don't step on toes or nothin' bad.
>
> CC1:   Well I think it's good I – I like having it . . . uh, good working relationship with ya and –
>
> KB:    Well we –
>
> CC1:   I think that –
>
> KB:    – want it to be good though too and we sure don't wanna . . . w-w-we don't wanna step on uncharted territory – [laughing]
>
> KB:    – and mess somebody up. So.
>
> CC1:   For sure. For sure. Umm, okay. So we're talkin' about Region 4.

**INDICTMENT – 13**

55.   On the call, Co-Conspirator Individual 1 recommitted to "put those guys in sec –
like third or fourth on the list." In response, KRIS BIRD agreed "we could punch them suckers
down so that it hurts 'em."

56.   KRIS BIRD and Co-Conspirator Individual 1 also agreed that Salmon was BIRD's
"home" and "turf."

57.   The defendants and their co-conspirators transmitted, and caused to be transmitted,
their bids by the March 21, 2023 bidding deadline.

58.   As planned, the defendants and their co-conspirators undercut Individual 4 and
Company D. For example, Company D was third on the list behind Co-Conspirator Company B
and Co-Conspirator Company C for Type 3 fuel trucks on Salmon's dispatch priority list.

### COUNT ONE
**Conspiracy to Commit Wire Fraud**
**18 U.S.C. § 1349**

59.   The General Allegations of this Indictment are re-alleged and fully incorporated
here by reference.

#### The Conspiracy and Its Objects

60.   From at least in or about February 2014, up to and including in or about March
2023, in the District of Idaho and elsewhere,

IKE TOMLINSON and KRIS BIRD,

the defendants, and others known and unknown to the Grand Jury, did knowingly and intentionally
combine, conspire, confederate, and agree together and with each other, to commit wire fraud, in
violation of Title 18, United States Code, Section 1343.

61.   It was a part and object of the conspiracy that the defendants, and others known and
unknown to the Grand Jury, knowingly having participated in, devised, and intending to devise, a

**INDICTMENT – 14**

scheme, plan, and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises—to wit, a scheme to defraud the United States Forest Service, and other federal and state agencies that procure firefighting-equipment services through the U.S. Forest Service, to obtain firefighting-equipment contracts and contract funds—would and did transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme, plan, and artifice, in violation of Title 18, United States Code, Section 1343.

### Manner and Means

62.     To further the objects of the conspiracy and the scheme, plan, and artifice to defraud, IKE TOMLINSON and KRIS BIRD, the defendants, and others known and unknown to the Grand Jury, used the following manner and means, among others:

a.     submitting, and causing to be submitted, annual certificates of independent price determination which they then and there well knew were materially false, for the purpose of obtaining fuel truck and water truck contracts from the U.S. Forest Service;

b.     participating in, coordinating, maintaining, and monitoring a bid-rigging and territorial-allocation conspiracy among co-conspirators, as described in Count Seven;

c.     coordinating bids for daily rates and dispatch centers for contracts on fuel trucks, water trucks, and communication trailers;

d.     coordinating, among themselves, priority on dispatch priority lists;

e.     coordinating bids for fuel truck contracts in order to increase, decrease, and stabilize the daily rates of fuel trucks;

f.     excluding and attempting to exclude competitors from the market—including, at times, refraining from bidding against each other with respect to a dispatch center, or bidding at a higher or lower daily rate with respect

to a dispatch center—to obtain resource orders for fuel trucks and water trucks;

g.     engaging in conversations—through phone calls, text messages, and other means of communication—to align their bids, including the daily rates and the dispatch centers of fuel trucks and water trucks, and priority on dispatch priority lists;

h.     purchasing and selling fuel trucks and associated businesses to remove competition from the market;

i.     submitting, and causing to be submitted, to the U.S. Forest Service claims for payment at collusive and noncompetitive daily rates and receiving payments in response to those claims;

j.     surveilling competitors and their equipment by, among other things, aerial surveillance, and unlawful entry onto premises;

k.     communicating with potential witnesses against them in this case and related cases;

l.     employing measures to conceal their actions by, among other things, communicating with each other by cell phone and text message, and making materially false, fictitious, and fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation (FBI).

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SIX
### Wire Fraud
### 18 U.S.C. §§ 1343 and 2(a)

63.     The General Allegations of this Indictment are re-alleged and fully incorporated here by reference.

64.     The allegations in Count One of this Indictment, including paragraphs 60 through 62 and their subparts, are re-alleged and fully incorporated here by reference.

65.     From at least in or about February 2014, up to and including in or about March 2023, in the District of Idaho and elsewhere,

**INDICTMENT – 16**

IKE TOMLINSON and KRIS BIRD,

the defendants, knowingly participated in, devised, intended to devise, a scheme, plan, and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises; to wit—a scheme to defraud the United States Forest Service, and other federal and state agencies that procure firefighting-equipment services through the U.S. Forest Service, to obtain firefighting-equipment contracts and contract funds.

66.     On or about the dates set forth below, in the District of Idaho and elsewhere, IKE TOMLINSON and KRIS BIRD, the defendants, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, and sounds for the purpose of executing such scheme, plan, and artifice to defraud; to wit—payments made from United States departments and agencies to the defendants, described below for each count, each transmission constituting a separate count, and aided and abetted the same, in violation of Title 18, United States Code, Sections 1343 and 2(a):

| COUNT | DATE | WIRE |
|:-----:|:----:|------|
| 2 | 9/9/2019 | $26,970.28 Wire Transfer to Co-Conspirator Company C Bank Account |
| 3 | 9/7/2022 | $62,820.84 Wire Transfer to Co-Conspirator Company B Bank Account |
| 4 | 10/4/2022 | $38,308.92 Wire Transfer to Co-Conspirator Company C Bank Account |
| 5 | 10/12/2022 | $55,095.11 Wire Transfer to Co-Conspirator Company B Bank Account |
| 6 | 1/3/2023 | $39,605.96 Wire Transfer to Co-Conspirator Company B Bank Account |

All in violation of Title 18, United States Code, Sections 1343 and 2(a).

**INDICTMENT – 17**

## COUNT SEVEN
**Conspiracy in Restraint of Trade: Bid Rigging and Territorial Allocation**
**15 U.S.C. § 1**

68.     The General Allegations of this Indictment are re-alleged and fully incorporated here by reference.

### Description of the Offense

69.     From at least in or about February 2014, up to and including in or about March 2023, in the District of Idaho and elsewhere,

IKE TOMLINSON and KRIS BIRD,

the defendants, and others known and unknown to the Grand Jury, knowingly entered into and engaged in a combination and conspiracy to suppress and eliminate competition by rigging bids and allocating territories for fuel truck contracts with the United States Forest Service.

70.     The bid-rigging and territorial allocation conspiracy engaged in by IKE TOMLINSON and KRIS BIRD was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

### Manner and Means

71.     For the purpose of forming and carrying out the charged combination and conspiracy, IKE TOMLINSON and KRIS BIRD, the defendants, and others known and unknown to the Grand Jury, did those things that they combined and conspired to do, including, among other things:

        a.      engaging in conversations—through phone calls, text messages, and other means of communication—to align their bids, including the daily rates and the dispatch centers of fuel trucks;

        b.      participating in conversations and communications for the purpose of reaffirming, maintaining, monitoring, and enforcing adherence to the agreement to rig bids and allocate territories;

c.   discussing and agreeing to suppress and eliminate competition among themselves for the U.S. Forest Service's fuel truck contracts by coordinating their bids—including, at times, by refraining from bidding against each other with respect to a dispatch center, or deliberately bidding at a higher or lower daily rate with respect to a dispatch center;

d.   discussing and agreeing to allocate among themselves U.S. Forest Service dispatch centers and priority on dispatch priority lists—including, among others, Great Basin dispatch region (Region 4) centers in (1) Boise, Idaho; (2) Salmon, Idaho; (3) Shoshone, Idaho; (4) Idaho Falls, Idaho; and (5) Elko, Nevada.

e.   coordinating their bids on U.S. Forest Service's fuel truck contracts in order to increase, decrease, and stabilize the daily rates of fuel trucks;

f.   coordinating their bids on U.S. Forest Service's fuel truck contracts in order to "squeeze," "drown," "punch," "low ball," deprioritize on the dispatch priority lists, and otherwise exclude and attempt to exclude from the market, the defendants' competitors;

g.   selling and accepting payment for fuel trucks at collusive and noncompetitive daily rates;

h.   employing measures to conceal their actions by, among other things, communicating with each other by cell phone and text message; submitting annual certificates of independent price determination that the defendants knew to be false; and making materially false, fictitious, and fraudulent statements and representations to Special Agents of the FBI.

**Trade and Commerce**

72.   The business activities of the defendants that are the subject of this Indictment were within the flow of, and substantially affected, interstate trade and commerce. For example, the defendants engaged in activities including, but not limited to: (1) entering into fuel truck contracts subject to the conspiracy with the U.S. Forest Service, a federal agency with its headquarters in Washington, D.C.; (2) receiving payments related to those fuel truck contracts from the U.S. Forest Service's federal funds; (3) causing the transmission of substantial sums of money across state

INDICTMENT – 19

lines in connection with those contracts; and (4) operating in multiple states, including Idaho, Nevada, and elsewhere.

All in violation of Title 15, United States Code, Section 1.

## CRIMINAL FORFEITURE ALLEGATIONS
### Fraud Forfeiture
### 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

73.     Upon conviction of the offenses alleged in Counts One through Six of this Indictment, the defendants—IKE TOMLINSON and KRIS BIRD—shall forfeit to the United States any and all property, real and personal, tangible and intangible, consisting or derived from any proceeds the said defendants obtained directly or indirectly as a result of the foregoing offenses. The property to be forfeited includes, but is not limited to, the following:

74.     *Unrecovered Cash Proceeds.* The defendants obtained and controlled unrecovered proceeds of the offense of conviction, or property derived from or traceable to such proceeds, but based upon actions of the defendants, the property was transferred, diminished, comingled, or is otherwise unavailable. The defendants obtained and controlled at least $222,801.11 in unrecovered forfeitable property.

75.     *Substitute Assets.* Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the government will seek forfeiture of substitute assets, or "any other property of the defendant" up to the value of the defendants' assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided

without difficulty.

Dated this 12th day of December 2023.

A TRUE BILL

/s/ [signature on reverse]
_____
FOREPERSON


_____
JONATHAN S. KANTER
Assistant Attorney General for the
Antitrust Division

JOSHUA D. HURWIT
United States Attorney for the
District of Idaho
By:


_____
MATTHEW CHOU
Trial Attorney
CHRISTOPHER J. CARLBERG
Assistant Chief
San Francisco Office

_____
SEAN M. MAZOROL
Assistant United States Attorney


**INDICTMENT – 21**